## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| **EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,** | Civil Action No.  0:22-cv-777 |
| Plaintiff, | |
| v. | **ANSWER** |
| **NORTH MEMORIAL HEALTH,** | |
| Defendant. | |

Defendant North Memorial Health ("North Memorial"), for its Answer, Defenses, and Affirmative Defenses to Plaintiff's Complaint, states and alleges as follows. North Memorial denies each and every allegation contained in the Complaint unless hereafter admitted, qualified, or otherwise answered.

### NATURE OF THE ACTION

**ANSWER**:    Insofar as the statements contained in the unnumbered paragraph entitled "Nature of the Action" require an affirmative response, North Memorial denies the allegations and legal conclusions in their entirety. North Memorial did not engage in any alleged unlawful employment practices, it did not discriminate against Kaylah Vogt ("Vogt"), it did not fail to accommodate Vogt, and neither Plaintiff nor Vogt are entitled to any relief whatsoever.

## JURISDICTION AND VENUE

1.      Jurisdiction of this Court is invoked pursuant to 28 U.S.C. §§ 451, 1331, 1337, 1343 and 1345. This action is authorized and instituted pursuant to Section 107(a) of the Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. § 12117(a), which incorporates by reference Section 706(f)(1) and (3) of Title VII of the Civil Rights Act of 1964 ("Title VII"), 42 U.S.C. §§ 2000e-5(f)(1) and (3), and pursuant to Section 102 of the Civil Rights Act of 1991, 42 U.S.C. § 1981a.

**ANSWER**:  The allegations in Paragraph 1 purport to be legal conclusions that require no affirmative response. Plaintiff has no legal claim against North Memorial.

2.      The employment practices alleged to be unlawful were and are now being committed within the jurisdiction of the United States District Court for the District of Minnesota.

**ANSWER**:  North Memorial denies the allegations in Paragraph 2.

## PARTIES

3.      Plaintiff EEOC is the agency of the United States of America charged with the administration, interpretation and enforcement of Title I of the ADA and is expressly authorized to bring this action by Section 107(a) of the ADA, 42 U.S.C. § 12117(a), which incorporates by reference Sections 706(f)(1) and (3) of Title VII, 42 U.S.C. §§ 2000e-5(f)(1).

**ANSWER**:  The allegations in Paragraph 3 purport to be legal conclusions that require no affirmative response. To the extent a response is required, North Memorial denies Plaintiff is expressly authorized to bring this action based on the facts alleged.

2

4.     At all relevant times, Defendant North Memorial Health, has continuously been a Minnesota corporation doing business in the State of Minnesota and the City of Robbinsdale. Defendant has continuously had at least 15 employees.

**ANSWER**:  Answering Paragraph 4, North Memorial admits that it operates within the State of Minnesota, including within the City of Robbinsdale, that it is a Minnesota non-profit corporation in good standing, and that it has had at least 15 employees at all times over the last two-plus years.  Any remaining allegations in Paragraph 4 are denied as stated.

5.     At all relevant times, Defendant has continuously been an employer engaged in an industry affecting commerce under Section 101(5) of the ADA, 42 U.S.C.§ 12111(5), and Section 101(7) of the ADA, 42 U.S.C. § 12111(7), which incorporates by reference Sections 701(g) and (h) of Title VII, 42 U.S.C. §§ 2000e(g) and (h).

**ANSWER**:  The allegations in Paragraph 5 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

6.     At all relevant times, Defendant has been a covered entity under Section 101(2) of the ADA, 42 U.S.C. § 12111(2).

**ANSWER**:  The allegations in Paragraph 6 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

## ADMINISTRATIVE PROCEDURES

7.      More than thirty days prior to the institution of this lawsuit, Kaylah Vogt filed a charge with the EEOC alleging violations of the ADA by Defendant.

**ANSWER**:  Answering Paragraph 7, North Memorial acknowledges that Vogt filed a Charge with the EEOC. North Memorial answered the Charge—denying all allegations of wrongdoing and any purported legal claim. North Memorial continues to deny the merits of that Charge, including all allegations of wrongdoing, and denies that Vogt was an applicant or individual entitled to relief under the ADA.

8.      On September 27, 2021, the EEOC issued to Defendant a Letter of Determination finding reasonable cause to believe that Defendant discriminated against Vogt in violation of the ADA by failing to hire her because of her disability and failing to provide her with a reasonable accommodation. The Letter of Determination invited Defendant to join with the EEOC in informal methods of conciliation to endeavor to eliminate the discriminatory practices and provide appropriate relief.

**ANSWER**:  Answering Paragraph 8, North Memorial acknowledges that Plaintiff issued a Letter of Determination as described on the date alleged but denies all other allegations, including the basis and propriety of Plaintiff's findings and the existence of any "discriminatory practices" by North Memorial. North Memorial denied and continues to deny the alleged probable cause finding because it did not discriminate against Vogt. North Memorial declined to engage in informal methods of conciliation because Plaintiff's probable cause finding was factually and legally incorrect, because North Memorial did not discriminate against Vogt, and because neither Plaintiff nor Vogt are entitled to any relief whatsoever.

9.      The EEOC engaged in communications with Defendant to provide Defendant the opportunity to remedy the discriminatory practices described in the Letter of Determination.

**ANSWER**:  The allegations in Paragraph 9 are denied as stated. The allegations imply North Memorial engaged in discriminatory practices, which is untrue.

10.      The EEOC was unable to secure from Defendant a conciliation agreement acceptable to the EEOC and on October 6, 2021, the EEOC issued Defendant a Notice of Failure of Conciliation for Vogt's charge.

**ANSWER**:  Answering Paragraph 10, North Memorial acknowledges Plaintiff issued a Notice of Failure of Conciliation on or about the date alleged. North Memorial denied and continues to deny it had any obligation to engage in conciliation because Plaintiff's probable cause finding was legally and factually erroneous and because North Memorial did not discriminate against Vogt. Any remaining allegations in this Paragraph are denied.

11.      All conditions precedent to the institution of this suit have been fulfilled.

**ANSWER**:  The allegations in Paragraph 11 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

## STATEMENT OF CLAIMS

12.      Defendant is a health care provider that operates two hospitals and 26 specialty and primary care clinics, urgent and emergency care facilities and medical transportation services throughout the Twin Cities (Minneapolis and St. Paul) metropolitan area.

5

**ANSWER**:  Answering Paragraph 12, North Memorial denies the allegations as stated. North Memorial clarifies, however, that it provides a range of important health care services throughout the Twin Cities metro area and outstate regions.

13.     On or about July 21, 2020, Defendant engaged in unlawful employment practices at its facilities in Minnesota in violation of Section 102(a), 42 U.S.C. § 12112.

**ANSWER**:  North Memorial vehemently denies the allegations in Paragraph 13, including all allegations of unlawful employment practices.

14.     Vogt applied for a greeter position with Defendant on July 21, 2020.

**ANSWER**:   North Memorial denies the allegations in Paragraph 14. In July 2020—a critical phase of the COVID-19 pandemic before vaccines were available—North Memorial was engaged with Favorite Healthcare Staffing ("Favorite") to supply temporary contract workers who were employed by Favorite to fill a number of temporary roles. One of these temporary roles was a Door Greeter/Escort, specifically designed to be a front-line role interacting with COVID-possible individuals at North Memorial's Level 1 Trauma Hospital in Robbinsdale, MN. Favorite assisted North Memorial to fill these Door Greeter/Escort roles on an urgent and weekly basis. The Door Greeter/Escort role was initially created as a direct result of Minnesota Governor Walz's orders and rules from the Minnesota Department of Health regarding COVID screening and requiring active attestation of visitors to any facility.

On July 21, 2020, Favorite contacted North Memorial and inquired about a "candidate" who it referred to as "hard of hearing" without mentioning the candidate by name. That individual,

now understood to be Vogt, never actually applied for any Door Greeter/Escort role. In fact, North Memorial has no knowledge of Vogt applying for any position with it.

15.     The job description for the greeter position included greeting visitors, applying COVID-19 masking standards and policies, giving directions, and keeping the area tidy and welcoming.

     a.     Greeters had a script that they would read from and questions they would ask patients and visitors about COVID-19 symptoms.

     b.     Greeters also had access to a corresponding poster board with images showing COVID-19 symptoms which they could point to in order to ask if individuals had experienced any of the symptoms.

**ANSWER**:  North Memorial denies the allegations in Paragraph 15 as stated. Plaintiff is alleging excerpts of the role description and, therefore, purposefully describing the Greeter/Escort role out of context. The relevant role description speaks for itself. North Memorial affirmatively states that (as relevant here) given the state of the COVID-19 pandemic at the time, the Door Greeters/Escorts were also required to have strong listening and verbal communication skills while interacting with individuals experiencing stress/grief and the ability to verbally communicate with customers and team members while maintaining proper safety requirements for team members and customers.

The Door Greeters/Escorts were stationed in either the emergency department or atrium of the hospital and needed to communicate quickly and succinctly with visitors regarding visitor policy, assess visitors' understanding and compliance, and troubleshoot—which communication was significantly hindered by COVID-necessitated face masks. Especially in the atrium, a small

area that all non-team members pass through, a lack of quick communication when screening visitors for COVID symptoms would create a bottleneck of foot traffic and challenge the ability of team members and visitors to appropriately space themselves, thereby potentially creating a health and safety risk to North Memorial team members, patients, and visitors. On any given day, an average of 2,000 team members and two hundred to several hundred visitors would pass through the hospital entrances and need to be screened. In addition to team members, Door Greeters/Escorts therefore interacted with a significant volume of people who entered North Memorial's hospital:

- Vendors. Door Greeters/Escorts communicated with and screened vendors who visited the hospital and may have needed directions throughout the facility. They also assisted with about 30 to 40 deliveries a day from vendors or family members/friends bringing deliveries to patients at the hospital (flowers, balloons, books, etc.). In the event of short-staffing at North Memorial's hospital gift shop, Door Greeters/Escorts would also assist with gift shop deliveries.

- Visitors. Greeters/Escorts communicated with and screened visitors, enforced the then-current visitor policy, and sent visitors to the information desk or security desk for a visitor identification sticker. Sometimes, visitors would become upset when they were not granted access to the hospital due to COVID restrictions—in more than one instance threatening violence. Door Greeters/Escorts had to communicate quickly with Security to de-escalate these situations. Effective and timely communication with Security was of paramount importance under these circumstances.

- Patients. Patients may arrive to be seen in the Emergency Department or for hospital appointments such as surgeries, heart and vascular care, therapy, or at the

family birth center. Door Greeters/Escorts were often required to communicate with and assist patients who came to the hospital in a wheel chair, or if patients needed such assistance if they were dropped off at the hospital for an appointment and experiencing an emergency while unable to walk. Consequently, timely and effective communication was critical and any delays or breakdowns would have created very serious health and safety consequences and pose a direct threat to the health or safety of those entrusting North Memorial with their care.

- Other Customers. Door Greeters/Escorts also assisted other individuals who visited North Memorial's hospital to get medical records, get labs drawn, or pick up prescriptions at the pharmacy.
  - While the pharmacy was doing contactless pick-up, Door Greeters/Escorts had to communicate with and direct those customers back to their vehicle and then to a particular parking area, giving them information to contact the pharmacy so that the staff can then deliver prescriptions to the customer's vehicle.
  - A fair number of individuals also arrived at North Memorial inquiring about getting tested for COVID. Door Greeters/Escorts would then communicate with, answer questions, and direct those individuals to the appropriate testing area.

16.    Defendant had authority and control over the greeter's work. For instance, Defendant:

a.    determined and set the greeter's schedule;

    b.      directed and assigned the greeter's work and day-to-day duties;

    c.      provided the workplace and materials to perform the greeter job;

    d.      assigned where the greeter worked at Defendant's facility;

    e.      supervised how the greeter performed the job; and

    f.      controlled the decision to hire, fire and discipline the greeter.

**ANSWER**:   North Memorial denies the allegations in Paragraph 16 as stated. North Memorial affirmatively states that Favorite employed the Door Greeters/Escorts, scheduled them, tracked and monitored discipline, and led the interview and hiring process based on the role description provided by North Memorial.


17.   Vogt was qualified for the greeter position and could perform the essential functions of the job.

**ANSWER**:  The allegations in Paragraph 17 are denied.


18.   Vogt is a qualified individual with a disability under the ADA, 42 U.S.C. § 12102(1)(A); 42 U.S.C. § 12111(8). Vogt is deaf. She is substantially limited in the major life activity of hearing. 42 U.S.C. § 12102(2).

**ANSWER**:  The allegations in Paragraph 18 purport to state legal conclusions that do not require a response. North Memorial is without information to admit or deny the allegations about Vogt's ability to hear. North Memorial denies any remaining allegations in paragraph 18.

19.     Vogt wears hearing aids. With the hearing aids she can hear people speaking without any difficulty. Vogt can communicate verbally. She can also communicate with American Sign Language (ASL).

**ANSWER**:  North Memorial is without information to admit or deny the allegations in Paragraph 19 and therefore denies the same, including all allegations that it was aware of the purported facts alleged in Paragraph 19 at the time that it was communicating with Favorite in July 2020 regarding an unnamed individual who was allegedly "hard of hearing."

North Memorial affirmatively alleges that it only knew from Favorite that the unnamed individual was hard of hearing and "communicate[d] via phone and stated that with people who have masks she uses signs to help communicate."

20.     Vogt was interviewed by a recruiter from a recruiting firm that had advertised the greeter position for Defendant. A manager of the recruiting firm also contacted Vogt and interviewed her for the position. Vogt told the recruiting manager that she was deaf and/or hearing impaired. The recruiting manager told Vogt that she would need to discuss this with Defendant. Vogt told the recruiter that she could perform the greeter job.

**ANSWER**:  North Memorial is without sufficient information to admit or deny the allegations in Paragraph 20 and, therefore, denies the same.

21.     On July 21, 2020, the recruiting manager contacted Defendant's manager who supervised the greeter position and informed him about Vogt's application and her disability.

**ANSWER**:  North Memorial denies the allegations in Paragraph 21 as stated. North Memorial affirmatively states that on July 21, 2020, a Senior Branch Director from Favorite

emailed the Manager of Brand Culture & Education at North Memorial to *inquire*—without naming Vogt or disclosing whether she had actually applied for any role—that Favorite "got a candidate inquire [sic] from someone who is hard of hearing. She uses an app on her phone to communicate via phone and stated that with people who have masks she uses signs to help communicate. Would this position be something she could manage and be successful at or do you think we would just be setting her up to fail by bringing her on? Just really looking to see if you feel someone with a hearing impairment could be successful/meet your standards for your greeters." North Memorial denies any remaining allegations in Paragraph 21.

22.     The recruiting manager inquired with Defendant's manager if Vogt could be hired and/or accommodated.

**ANSWER**:  The allegations in Paragraph 22 are denied as stated. North Memorial was never asked whether "Vogt could be hired and/or accommodated."

23.     A few days later, Defendant's manager replied to the recruiting manager that Defendant will not be able to move forward with Vogt's application.

**ANSWER**:  North Memorial denies the allegations in Paragraph 23. Vogt never applied for a position with North Memorial. Additionally, North Memorial had no knowledge that Vogt applied for a position with Favorite.

24.     The recruiting manager contacted Vogt and informed her that she would not be hired as a greeter for Defendant.

**ANSWER**:  North Memorial has no knowledge of the communications between Favorite and Vogt and, therefore, denies the allegations in paragraph 24.

25.     The effect of the practices complained of in paragraphs 13-24 above, has been to deprive Vogt of equal employment opportunities and otherwise adversely affect her status as an employee because of her disability.

**ANSWER**:  The allegations in Paragraph 25 are denied.

26.     The unlawful employment practices complained of in paragraphs 13-24 above were and are intentional.

**ANSWER**:  The allegations in Paragraph 26 are denied.

27.     The unlawful employment practices complained of in paragraphs 13-24 above were done with malice or reckless indifference to the federally protected rights of Vogt.

**ANSWER**:  The allegations in Paragraph 27 are categorically denied.

## DEFENSES AND AFFIRMATIVE DEFENSES

North Memorial sets forth the following defenses and affirmative defenses. North Memorial does not assume the burden of proof with respect to any matter at or which, pursuant to law, Plaintiff bears the burden.

1.     Plaintiff's Complaint fails to plead, allege, or state facts sufficient to state a claim upon which relief can be granted against North Memorial.

2.      Plaintiff's claims are barred, in whole or in part, to any extent mandatory administrative remedies have not been exhausted or other applicable statutory prerequisites to filing suit have not been met.

3.      Plaintiff's claims and allegations may be barred in whole or in part by the scope of charge doctrine.

4.      Vogt was not an applicant entitled to protection under the ADA.

5.      Vogt is not disabled and is not a qualified person with a disability.

6.      Vogt was unable to fulfill all essential functions of the temporary greeter position, even assuming she had applied.

7.      Vogt failed to fully inform North Memorial of the extent to which her hearing is impaired.

8.      Plaintiff's purported claims are barred in whole or in part by the same decision defense.

9.      Any requested/purported accommodations were unreasonable and constituted undue hardship and/or would have resulted in or created a direct threat to the health and safety of others.  These undue hardships and direct threat defenses bar Plaintiff's purported claim.

10.      Vogt suffered no adverse employment action.

11.      Vogt has failed to mitigate her damages, if any.

12.      Any actions taken by North Memorial were based upon legitimate, nondiscriminatory, and non-retaliatory reasons, and not in violation of any contract, policy, statute, law, rule, regulation, or ordinance prohibiting discrimination based on disability or any other protected category.

13.     Any actions taken by North Memorial were based on legitimate business considerations, were reasonable and undertaken in good faith, and were done without the intent to discriminate against, injure, or harm Vogt.

14.     Any damages sustained by Vogt, as alleged in the Complaint, were caused or contributed to by her own actions or inaction.

15.     Vogt is barred from obtaining the relief sought in this action based upon the doctrines of estoppel, waiver, laches, and/or unclean hands.

16.     Vogt's damages, if any, are barred, in whole or in part, by the after-acquired evidence doctrine.

17.     Vogt's claims for relief, to the extent they state a claim, are subject to any applicable damages caps or limitations.

18.     North Memorial asserts that it may have further and additional affirmative defenses, the nature of which cannot be determined until it has had an opportunity to engage in discovery. North Memorial therefore incorporates any and all affirmative defenses and reserves the right to assert additional affirmative defenses as discovery progresses.

WHEREFORE, North Memorial demands judgment against Plaintiff as follows:

1.     Dismissal of the Complaint with prejudice and on the merits;

2.     Awarding North Memorial its costs and attorneys' fees incurred herein; and

3.     For such other and further relief as the Court deems just and equitable.

Dated:  May 27, 2022                    **FREDRIKSON & BYRON, P.A.**

                                        */s/ Brian T. Benkstein*
                                        Brian T. Benkstein
                                        Kendra D. Simmons (*admission
                                        forthcoming*)

**FREDRIKSON & BYRON, P.A.**
200 South Sixth Street, Suite 4000
Minneapolis, MN  55402-1425
Telephone:  612.492.7000
bbenkstein@fredlaw.com
ksimmons@fredlaw.com

*Attorneys for Defendant*