UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| **Equal Employment Opportunity Commission**, | Case No. 0:22-cv-777 (NEB/TNL) |
| Plaintiff, | |
| **Kaylah Vogt**, | |
| Plaintiff-Intervenor, | |
| v. | **COMPLAINT OF PLAINTIFF-INTERVENOR** |
| **North Memorial Health**, | **(JURY TRIAL DEMANDED)** |
| Defendant. | |

Plaintiff-Intervenor Kaylah Vogt, for her Complaint against North Memorial Health, states and alleges as follows:

1.  Ms. Vogt incorporates the facts and allegations in the EEOC's Complaint in this matter (Doc. 1) as if fully set forth herein.

## JURISDICTION AND VENUE

2.  Ms. Vogt bases her claims, in part, on the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008 ("ADAAA"), 42 U.S.C. § 12117 *et seq.,* and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

3.  Supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is invoked for Ms. Vogt's state law claims, as these claims form part of the same case and controversy as Ms. Vogt's federal claims.

4. Venue is this Court is appropriate pursuant to 28 U.S.C. § 1391, as the unlawful practices and acts described herein occurred within this State and District.

5. Ms. Vogt filed a charge of discrimination with the EEOC on August 21, 2020. On September 27, 2021, the EEOC issued a finding of probable cause that Defendant discriminated against her in violation of the ADA. On April 1, 2022, the EEOC commenced this lawsuit.

## PARTIES

6. Kaylah Vogt is an individual person who, at times relevant to this Complaint, was a "qualified individual" under the ADA. Ms. Vogt is currently a resident and domiciliary of the State of Minnesota.

7. At all times relevant to this Complaint, Defendant North Memorial Health is and has been a Minnesota corporation doing business in the State of Minnesota. At all times relevant herein, Defendant has continuously had at least fifteen (15) employees and has been a covered "employer" as that term is defined under the ADA and MHRA.

8. At all times relevant to this Complaint, all individual managers, supervisors, and human resource personnel referred to herein acted with actual authority from Defendant North Memorial Health and as agents of the same.

## FACTUAL BACKGROUND

9. Defendant North Memorial Health is a health care provider that operates several hospitals and clinics in the greater Twin Cities area.

10. In July 2020, a job vacancy arose at Defendant for the position of greeter.

11. The job description for the greeter position included greeting visitors, applying COVID-19 masking standards and policies, giving directions, and keeping the welcome area clean and tidy.

12. Defendant provided greeters with a script from which they would read which included questions that the greeters would ask visitors/patients regarding COVID-19 symptoms.

13. Greeters also had access to a corresponding poster board with images showing COVID-19 symptoms which they could point to in order to ask if individuals had experienced any of the symptoms.

14. Defendant had authority and control over the greeter's work. For instance, Defendant:

    a. Determined the greeter's schedule;

    b. Directed and assigned the greeter's work and day-to-day duties;

    c. Provided the workplace and materials to perform the greeter job;

    d. Assigned where the greeter performed the job;

    e. Supervised how the greeter performed the job; and

    f. Controlled the decision to hire, fire, and discipline the greeter.

15. Ms. Vogt is a qualified individual with a disability under the ADA and MHRA.

16. Ms. Vogt is deaf and is substantially limited in the major life activity of hearing. *See* 42 U.S.C. § 12102(2)(a).

17. Ms. Vogt was qualified for the greeter position and could perform the essential functions of the job with or without an accommodation.

18. Ms. Vogt wears hearing aids. With the hearing aids, Ms. Vogt can hear people speaking without any difficulty. Ms. Vogt can communicate both verbally and through the use of American Sign Language (ASL).

19. On or about July 21, 2020, Ms. Vogt applied for the greeter position at Defendant.

20. Ms. Vogt was interviewed by a recruiter from a recruiting firm that had advertised the greeter position for Defendant.

21. Ms. Vogt's interview was conducted via a video relay service with an ASL interpreter.

22. Based on her interview, Ms. Vogt was informed that Defendant was interested in hiring Ms. Vogt.

23. The interviewer had authority from Defendant to hire Ms. Vogt.

24. After offering employment to Ms. Vogt, Defendant's interviewer began talking with Ms. Vogt about the employment onboarding process with Defendant.

25. During this conversation, the recruiter asked Ms. Vogt whether she was experiencing a lag during the call.

26. Ms. Vogt informed the recruiting manager that she was deaf and/or hearing impaired and therefore was using a video relay service with an ASL interpreter.

27. Notwithstanding the use of an interpreter, Ms. Vogt assured the interviewer that she was capable of performing the greeter job functions with or without an accommodation and provided examples of viable accommodations.

28. The recruiting manager informed Ms. Vogt that she would need to discuss this with Defendant's hiring manager.

29. On July 21, 2020, the recruiting manager contacted Defendant's manager who supervised the greeter position and informed him about Ms. Vogt's application and her disability.

30. The recruiting manager inquired with Defendant's manager whether Ms. Vogt could be hired and/or accommodated.

31. A few days later, Defendant's manager replied to the recruiting manager that Defendant did not want to hire Ms. Vogt because of her disability.

32. The recruiting manager contacted Ms. Vogt and informed her that she would not be hired as a greeter for Defendant.

33. Defendant's decision not to hire Ms. Vogt because of her disability deprived Ms. Vogt of equal employment opportunities and otherwise adversely affected her status as an employee because of her disability.

34. Defendant's decision not to hire Ms. Vogt because of her disability was intentional and undertaken with malice and/or reckless indifference to the federally protected rights of Ms. Vogt.

35. Defendant's actions have caused Ms. Vogt substantial emotional distress.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101, *et seq.* (Disability Discrimination)

36. Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

37. The Americans with Disabilities Act ("ADA") provides that it is an unlawful employment practice to "discriminate against a qualified individual on the basis of disability in regard to the job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

38. The ADA defines a "disability" as: (A) a physical or mental impairment that substantially limits one of more major life activities of such individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment." 42 U.S.C. § 12101(1).

39. The ADA mandates the definition of disability to "be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

40. Major life activities under the ADA include: "hearing[.]" 42 U.S.C. 12102(2)(A).

41. Plaintiff's deafness and/or hearing impairment constitutes a disability under the ADA.

42. Defendant was aware of Plaintiff's disability.

43. Defendant's conduct including refusing to hire Plaintiff because of her disability violated the ADA.

44. As a result of Defendant's conduct in direct violation of the ADA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress, and other damages in amounts in excess of $75,000.

45. Defendant committed the above-described acts with malice and/or in reckless disregard of Plaintiff's rights under the ADA. As a result thereof, Plaintiff is entitled to punitive damages.

## COUNT II

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101,** *et seq.* **(Failure to Accommodate)**

46. Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

47. The ADA provides that discrimination includes the failure to make reasonable accommodations for an individual's disability. 42 U.S.C. § 12112(b)(5)(a).

48. Defendant was aware of Plaintiff's disability and was obligated to engage in an interactive process to determine whether Plaintiff needed accommodations to perform the essential functions of the greeter position.

49. Reasonable accommodations for Plaintiff's disability existed.

50. Defendant violated the ADA by failing to provide accommodations and/or engage in an interactive process to determine whether Plaintiff was able to perform the essential functions of the position with or without an accommodation.

51. As a result of Defendant's conduct in direct violation of the ADA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress, and other damages in amounts in excess of $75,000.

52. Defendant committed the above-described acts with malice and/or in reckless disregard of Plaintiff's rights under the ADA. As a result thereof, Plaintiff is entitled to punitive damages.

## COUNT III

### VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT
### MINN. STAT. § 363A.01, *et seq.* (Disability Discrimination)

53. Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

54. The Minnesota Human Rights Act provides that "it is an unfair employment practice for an employer, because of…disability…to: (1) refuse to hire…or (3) discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment. Minn. Stat. § 363A.08 Subd. 2(1) & (3).

55. A disability under Minn. Stat. § 363A.03(12) is "any condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment."

56. Plaintiff had a qualifying disability under the MHRA.

57. Plaintiff's deafness and/or hearing impairment was a physical impairment that materially limited one or more major life activities.

58. Defendant's conduct herein described including but not limited to refusing to hire Plaintiff and/or terminating Plaintiff's employment violated Minn. Stat. § 363A.08.

59. As a result of Defendant's conduct in direct violation of the MHRA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $75,000.00 but to be determined by a jury at trial.

60. Defendant committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result thereof, and to the extent necessary, Plaintiff gives notice of her intent to seek leave to add a claim for punitive damages under the MHRA.

## COUNT IV

**VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT**
**Minn. Stat. § 363A.01 *et seq*. (Failure to Accommodate)**

61. Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

62. Minnesota Statute § 363A.08, subd. 6, makes it an unfair employment practice for an employer "not to make reasonable accommodation to the known disability of a qualified disabled person ... unless the employer ... can demonstrate that the accommodation would impose an undue hardship on the business."

63. Plaintiff's deafness and/or hearing impairment constituted an impairment that substantially and materially limited one or more major life activities and has a record of such impairment.

64. Defendant failed to reasonably accommodate Plaintiff's known disability and failed to engage Plaintiff in an interactive process to determine whether reasonable accommodations for Plaintiff were available.

65. Defendant's conduct described herein constituted unfair employment practices in violation of Minn. Stat. § 363A.08, Subd. 6.

66. As a result of Defendant's conduct in direct violation of the MHRA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $75,000.00.

67. Defendant committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result thereof, and to the extent necessary, Plaintiff gives notice of her intent to seek leave to add a claim for punitive damages under the MHRA.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff-Intervenor Kaylah Vogt requests that this Court enter a judgment in favor of Ms. Vogt and against Defendants as follows:

1. An order granting Ms. Vogt judgment against Defendant;

2. An order granting Ms. Vogt compensatory damages in such amount as the jury may determine, but not less than $75,000.00;

3. An order granting Ms. Vogt punitive damages;

4. An order granting Ms. Vogt treble damages;

5. An order granting Ms. Vogt injunctive and declaratory relief against Defendant, whereby the Defendant is temporarily and permanently enjoined and restrained from any further discrimination of Ms. Vogt;

9

6.  An order for Defendant to pay Ms. Vogt's costs, disbursements, interest, and attorneys' fees as allowed under the ADA and MHRA;

7.  An order for Defendant to pay any and all further relief available, such as any relief this Court may consider equitable or appropriate, including but not limited to: all civil penalties payable to the State of Minnesota.

PLAINTIFF DEMANDS A JURY TRIAL.

Dated: July 7, 2022.                                    **TYLER W. BRENNAN LAW, LLC**

/s/ Tyler W. Brennan
Tyler W. Brennan, #397003
T3 Building
323 N. Washington Ave. #200
Minneapolis, MN 55401
Phone: (612) 351.0084
Fax: (612) 354.4152
E-mail: tyler@tylerwbrennanlaw.com