## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

---

**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,**

Plaintiff,

**KAYLAH VOGT,**

Plaintiff-Intervenor,

v.

**NORTH MEMORIAL HEALTH,**

Defendant.

Civil Action No.  0:22-cv-777

**ANSWER TO INTERVENOR COMPLAINT**

---

Defendant North Memorial Health ("North Memorial"), for its Answer, Defenses, and Affirmative Defenses to Plaintiff-Intervenor's Complaint, states and alleges as follows. North Memorial denies each and every allegation contained in the Complaint unless hereafter admitted, qualified, or otherwise answered.

1.     Ms. Vogt incorporates the facts and allegations in the EEOC's Complaint in this matter (Doc. 1) as if fully set forth herein.

**ANSWER:**   North Memorial incorporates its responses and affirmative defenses contained in its Answer (Doc. 6) to the EEOC's Complaint as if fully set forth herein. North Memorial denies any remaining allegations in paragraph 1.

## JURISDICTION AND VENUE

2.     Ms. Vogt bases her claims, in part, on the Americans with Disabilities Act of 1990 ("ADA"), as amended by the Americans with Disabilities Amendments Act of 2008 ("ADAAA"),

42 U.S.C. § 12117 *et seq.,* and therefore this Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1331 and 1343.

**ANSWER:**    The allegations in paragraph 2 purport to be legal conclusions that require no affirmative response. Vogt has no legal claim against North Memorial.

3.    Supplemental jurisdiction pursuant to 28 U.S.C. § 1367 is invoked for Ms. Vogt's state law claims, as these claims form part of the same case and controversy as Ms. Vogt's federal claims.

**ANSWER:**    The allegations in paragraph 3 purport to be legal conclusions that require no affirmative response. Vogt has no legal claim against North Memorial.

4.    Venue is this Court is appropriate pursuant to 28 U.S.C. § 1391, as the unlawful practices and acts described herein occurred within this State and District.

**ANSWER:**    The allegations in paragraph 4 purport to be legal conclusions that require no affirmative response. Vogt has no legal claim against North Memorial.

5.    Ms. Vogt filed a charge of discrimination with the EEOC on August 21, 2020. On September 27, 2021, the EEOC issued a finding of probable cause that Defendant discriminated against her in violation of the ADA. On April 1, 2022, the EEOC commenced this lawsuit.

**ANSWER:**    Answering paragraph 5, North Memorial acknowledges that Vogt filed a Charge with the EEOC, which initially filed the pending lawsuit. North Memorial answered that Charge and the EEOC's Complaint—denying all allegations of wrongdoing and any purported legal claim. North Memorial continues to deny the merits of that Charge, the EEOC's Complaint, and Vogt's Intervenor Complaint—including all allegations of wrongdoing—and denies that Vogt was an applicant or individual entitled to relief under the ADA.

2

North Memorial also acknowledges that the EEOC issued a Letter of Determination on the date alleged but denies all other allegations, including the basis and propriety of the EEOC's findings and the existence of any "discriminatory practices" by North Memorial. North Memorial denied and continues to deny the alleged probable cause finding because it did not discriminate against Vogt. North Memorial declined to engage in informal methods of conciliation because the EEOC's probable cause finding was factually and legally incorrect, because North Memorial did not discriminate against Vogt, and because neither the EEOC nor Vogt are entitled to any relief whatsoever.

## **PARTIES**

6.      Kaylah Vogt is an individual person who, at times relevant to this Complaint, was a "qualified individual" under the ADA. Ms. Vogt is currently a resident and domiciliary of the State of Minnesota.

**ANSWER:**    The allegations in paragraph 6 purport to state legal conclusions that do not require a response. North Memorial is without information to admit or deny the allegations about Vogt's residence. North Memorial denies any remaining allegations in paragraph 6, including that Vogt is a "qualified individual" entitled to relief under the ADA.

7.      At all times relevant to this Complaint, Defendant North Memorial Health is and has been a Minnesota corporation doing business in the State of Minnesota. At all times relevant herein, Defendant has continuously had at least fifteen (15) employees and has been a covered "employer" as that term is defined under the ADA and MHRA.

**ANSWER:**    Answering paragraph 7, North Memorial admits that it operates within the State of Minnesota and that it has had at least 15 employees at all times over the last two-plus years. Any remaining allegations in paragraph 7 are denied as stated.

3

8.      At all times relevant to this Complaint, all individual managers, supervisors, and human resource personnel referred to herein acted with actual authority from Defendant North Memorial Health and as agents of the same.

**ANSWER:**   The allegations in paragraph 8 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

## FACTUAL BACKGROUND

9.      Defendant North Memorial Health is a health care provider that operates several hospitals and clinics in the greater Twin Cities area.

**ANSWER:**   Answering paragraph 9, North Memorial denies the allegations as stated. North Memorial clarifies, however, that it provides a range of important health care services throughout the Twin Cities metro area and outstate regions.

10.     In July 2020, a job vacancy arose at Defendant for the position of greeter.

**ANSWER:**   North Memorial denies the allegations in paragraph 10 as stated. In July 2020—a critical phase of the COVID-19 pandemic before vaccines were available—North Memorial was engaged with Favorite Healthcare Staffing ("Favorite") to supply temporary contract workers who were employed by Favorite to fill a number of temporary roles. One of these temporary roles was a Door Greeter/Escort, specifically designed to be a front-line role interacting with COVID-possible individuals at North Memorial's Level 1 Trauma Hospital in Robbinsdale, MN. Favorite assisted North Memorial to fill these Door Greeter/Escort roles on an urgent and weekly basis. The Door Greeter/Escort role was initially created as a direct result of Minnesota Governor Walz's orders and rules from the Minnesota Department of Health regarding COVID screening and requiring active attestation of visitors to any facility.

4

11.     The job description for the greeter position included greeting visitors, applying COVID-19 masking standards and policies, giving directions, and keeping the welcome area clean and tidy.

**ANSWER:**     North Memorial denies the allegations in paragraph 11 as stated. Vogt is alleging excerpts of the role description and, therefore, purposefully describing the Greeter/Escort role out of context. The relevant role description speaks for itself. North Memorial affirmatively states that (as relevant here) given the state of the COVID-19 pandemic at the time, the Door Greeters/Escorts were also required to have strong listening and verbal communication skills while interacting with individuals experiencing stress/grief and the ability to verbally communicate with customers and team members while maintaining proper safety requirements for team members and customers.

The Door Greeters/Escorts were stationed in either the emergency department or atrium of the hospital and needed to communicate quickly and succinctly with visitors regarding visitor policy, assess visitors' understanding and compliance, and troubleshoot—which communication was significantly hindered by COVID-necessitated face masks. Especially in the atrium, a small area that all non-team members pass through, a lack of quick communication when screening visitors for COVID symptoms would create a bottleneck of foot traffic and challenge the ability of team members and visitors to appropriately space themselves, thereby potentially creating a health and safety risk to North Memorial team members, patients, and visitors. On any given day, an average of 2,000 team members and two hundred to several hundred visitors would pass through the hospital entrances and need to be screened. In addition to team members, Door Greeters/Escorts therefore interacted with a significant volume of people who entered North Memorial's hospital:

- <u>Vendors</u>.  Door Greeters/Escorts communicated with and screened vendors who visited the hospital and may have needed directions throughout the facility. They also assisted with about 30 to 40 deliveries a day from vendors or family members/friends bringing deliveries to patients at the hospital (flowers, balloons, books, etc.). In the event of short-staffing at North Memorial's hospital gift shop, Door Greeters/Escorts would also assist with gift shop deliveries.

- <u>Visitors</u>.  Greeters/Escorts communicated with and screened visitors, enforced the then-current visitor policy, and sent visitors to the information desk or security desk for a visitor identification sticker. Sometimes, visitors would become upset when they were not granted access to the hospital due to COVID restrictions—in more than one instance threatening violence. Door Greeters/Escorts had to communicate quickly with Security to de-escalate these situations. Effective and timely communication with Security was of paramount importance under these circumstances.

- <u>Patients</u>.  Patients may arrive to be seen in the Emergency Department or for hospital appointments such as surgeries, heart and vascular care, therapy, or at the family birth center. Door Greeters/Escorts were often required to communicate with and assist patients who came to the hospital in a wheelchair, or if patients needed such assistance if they were dropped off at the hospital for an appointment and experiencing an emergency while unable to walk. Consequently, timely and effective communication was critical and any delays or breakdowns would have created very serious health and safety consequences and pose a direct threat to the health or safety of those entrusting North Memorial with their care.

- <u>Other Customers</u>.  Door Greeters/Escorts also assisted other individuals who visited North Memorial's hospital to get medical records, get labs drawn, or pick up prescriptions at the pharmacy.

  o While the pharmacy was doing contactless pick-up, Door Greeters/Escorts had to communicate with and direct those customers back to their vehicle and then to a particular parking area, giving them information to contact the pharmacy so that the staff can then deliver prescriptions to the customer's vehicle.

  o A fair number of individuals also arrived at North Memorial inquiring about getting tested for COVID. Door Greeters/Escorts would then communicate with, answer questions, and direct those individuals to the appropriate testing area.

12.     Defendant provided greeters with a script from which they would read which included questions that the greeters would ask visitors/patients regarding COVID-19 symptoms.

**ANSWER:**   North Memorial denies the allegations in paragraph 12 as stated and incorporates here its response to paragraph 11.

13.     Greeters also had access to a corresponding poster board with images showing COVID-19 symptoms which they could point to in order to ask if individuals had experienced any of the symptoms.

**ANSWER:**   North Memorial denies the allegations in paragraph 13 as stated and incorporates here its response to paragraph 11.

14.     Defendant had authority and control over the greeter's work. For instance, Defendant:

    a.   Determined the greeter's schedule;

    b.   Directed and assigned the greeter's work and day-to-day duties;

    c.   Provided the workplace and materials to perform the greeter job;

    d.   Assigned where the greeter performed the job;

    e.   Supervised how the greeter performed the job; and

    f.   Controlled the decision to hire, fire, and discipline the greeter.

**ANSWER:**     North Memorial denies the allegations in paragraph 14 as stated. North Memorial affirmatively states that Favorite employed the Door Greeters/Escorts, scheduled them, tracked and monitored discipline, and led the interview and hiring process based on the role description provided by North Memorial.

15.     Ms. Vogt is a qualified individual with a disability under the ADA and MHRA.

**ANSWER:**     The allegations in paragraph 15 purport to state legal conclusions that do not require a response.

16.     Ms. Vogt is deaf and is substantially limited in the major life activity of hearing. *See* 42 U.S.C. § 12102(2)(a).

**ANSWER:**     The allegations in paragraph 16 purport to state legal conclusions that do not require a response. North Memorial is also without information to admit or deny the allegations about Vogt's ability to hear. North Memorial denies any remaining allegations in paragraph 16.

17.     Ms. Vogt was qualified for the greeter position and could perform the essential functions of the job with or without an accommodation.

**ANSWER:**    North Memorial is without information to admit or deny the allegations in paragraph 17 and therefore denies the same, including all allegations that it was aware of the purported facts alleged by Vogt regarding her hearing ability/impairment at the time that North Memorial was communicating with Favorite in July 2020 regarding an unnamed individual who was allegedly "hard of hearing."

North Memorial affirmatively alleges that it only knew from Favorite that the unnamed individual was hard of hearing and "communicate[d] via phone and stated that with people who have masks she uses signs to help communicate." North Memorial denies any remaining allegations in paragraph 17.

18.    Ms. Vogt wears hearing aids. With the hearing aids, Ms. Vogt can hear people speaking without any difficulty. Ms. Vogt can communicate both verbally and through the use of American Sign Language (ASL).

**ANSWER:**    North Memorial is without information to admit or deny the allegations in paragraph 18 and therefore denies the same, including all allegations that it was aware of the purported facts alleged in paragraph 18 at the time that it was communicating with Favorite in July 2020 regarding an unnamed individual who was allegedly "hard of hearing."

North Memorial affirmatively alleges that it only knew from Favorite that the unnamed individual was hard of hearing and "communicate[d] via phone and stated that with people who have masks she uses signs to help communicate." North Memorial denies any remaining allegations in paragraph 18.

19.    On or about July 21, 2020, Ms. Vogt applied for the greeter position at Defendant.

**ANSWER:**    North Memorial denies the allegations in paragraph 19. In July 2020—a critical phase of the COVID-19 pandemic before vaccines were available—North Memorial was

engaged with Favorite to supply temporary contract workers who were employed by Favorite to fill a number of temporary roles. One of these temporary roles was a Door Greeter/Escort, specifically designed to be a front-line role interacting with COVID-possible individuals at North Memorial's Level 1 Trauma Hospital in Robbinsdale, MN. Favorite assisted North Memorial to fill these Door Greeter/Escort roles on an urgent and weekly basis. The Door Greeter/Escort role was initially created as a direct result of Minnesota Governor Walz's orders and rules from the Minnesota Department of Health regarding COVID screening and requiring active attestation of visitors to any facility.

On July 21, 2020, Favorite contacted North Memorial and inquired about a "candidate" who it referred to as "hard of hearing" without mentioning the candidate by name. That individual, now understood to be Vogt, never actually applied for any Door Greeter/Escort role. In fact, North Memorial has no knowledge of Vogt applying for any position with it.

20.     Ms. Vogt was interviewed by a recruiter from a recruiting firm that had advertised the greeter position for Defendant.

**ANSWER:**   North Memorial is without sufficient information to admit or deny the allegations in paragraph 20 regarding the actions by Favorite and, therefore, denies the same.

21.     Ms. Vogt's interview was conducted via a video relay service with an ASL interpreter.

**ANSWER:**   North Memorial is without sufficient information to admit or deny the allegations in paragraph 21 regarding the actions by Favorite and, therefore, denies the same.

22.     Based on her interview, Ms. Vogt was informed that Defendant was interested in hiring Ms. Vogt.

**ANSWER:**   North Memorial is without sufficient information to admit or deny the allegations in paragraph 22 regarding the actions by Favorite and, therefore, denies the same.

23.     The interviewer had authority from Defendant to hire Ms. Vogt.

**ANSWER:**   North Memorial denies the allegations in paragraph 23 as stated.

24.     After offering employment to Ms. Vogt, Defendant's interviewer began talking with Ms. Vogt about the employment onboarding process with Defendant.

**ANSWER:**   North Memorial is without sufficient information to admit or deny the allegations in paragraph 24 regarding the actions by Favorite and, therefore, denies the same.

25.     During this conversation, the recruiter asked Ms. Vogt whether she was experiencing a lag during the call.

**ANSWER:**   North Memorial is without sufficient information to admit or deny the allegations in paragraph 25 regarding the actions by Favorite and, therefore, denies the same.

26.     Ms. Vogt informed the recruiting manager that she was deaf and/or hearing impaired and therefore was using a video relay service with an ASL interpreter.

**ANSWER:**   North Memorial is without sufficient information to admit or deny the allegations in paragraph 26 regarding interactions between Vogt and Favorite and, therefore, denies the same.

27.     Notwithstanding the use of an interpreter, Ms. Vogt assured the interviewer that she was capable of performing the greeter job functions with or without an accommodation and provided examples of viable accommodations.

**ANSWER:**   North Memorial is without sufficient information to admit or deny the allegations in paragraph 27 regarding interactions between Vogt and Favorite and, therefore, denies the same.

28.     The recruiting manager informed Ms. Vogt that she would need to discuss this with Defendant's hiring manager.

**ANSWER:**   North Memorial is without sufficient information to admit or deny the allegations in paragraph 28 regarding the actions by Favorite and, therefore, denies the same.

29.     On July 21, 2020, the recruiting manager contacted Defendant's manager who supervised the greeter position and informed him about Ms. Vogt's application and her disability.

**ANSWER:**   North Memorial denies the allegations in paragraph 29 as stated. North Memorial affirmatively states that on July 21, 2020, a Senior Branch Director from Favorite emailed the Manager of Brand Culture & Education at North Memorial to *inquire*—without naming Vogt or disclosing whether she had actually applied for any role—that Favorite "got a candidate inquire [sic] from someone who is hard of hearing. She uses an app on her phone to communicate via phone and stated that with people who have masks she uses signs to help communicate. Would this position be something she could manage and be successful at or do you think we would just be setting her up to fail by bringing her on? Just really looking to see if you feel someone with a hearing impairment could be successful/meet your standards for your greeters." North Memorial denies any remaining allegations in paragraph 29.

30.     The recruiting manager inquired with Defendant's manager whether Ms. Vogt could be hired and/or accommodated.

**ANSWER:**   The allegations in paragraph 30 are denied as stated. North Memorial was never asked whether "Vogt could be hired and/or accommodated."

31.   A few days later, Defendant's manager replied to the recruiting manager that Defendant did not want to hire Ms. Vogt because of her disability.

**ANSWER:**   North Memorial denies the allegations in paragraph 31. Vogt never applied for a position with North Memorial. Additionally, North Memorial had no knowledge that Vogt applied for a position with Favorite.

32.   The recruiting manager contacted Ms. Vogt and informed her that she would not be hired as a greeter for Defendant.

**ANSWER:**   North Memorial is without sufficient information to admit or deny the allegations in paragraph 32 regarding the actions by Favorite and, therefore, denies the same.

33.   Defendant's decision not to hire Ms. Vogt because of her disability deprived Ms. Vogt of equal employment opportunities and otherwise adversely affected her status as an employee because of her disability.

**ANSWER:**   North Memorial denies the allegations in paragraph 33, including all allegations that it made any decision because of any disability of Vogt. Vogt never applied for a position with North Memorial. Additionally, North Memorial had no knowledge that Vogt applied for a position with Favorite.

34.   Defendant's decision not to hire Ms. Vogt because of her disability was intentional and undertaken with malice and/or reckless indifference to the federally protected rights of Ms. Vogt.

**ANSWER:**   The allegations in paragraph 34 are categorically denied.

35.     Defendant's actions have caused Ms. Vogt substantial emotional distress.

**ANSWER:**     The allegations in paragraph 35 are denied.

## CAUSES OF ACTION

### COUNT I

### VIOLATION OF THE AMERICANS WITH DISABILITIES ACT
### 42 U.S.C. § 12101, *et seq.* (Disability Discrimination)

36.     Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

**ANSWER:**     North Memorial incorporates its responses to all foregoing paragraphs as if fully set forth herein.

37.     The Americans with Disabilities Act ("ADA") provides that it is an unlawful employment practice to "discriminate against a qualified individual on the basis of disability in regard to the job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment. 42 U.S.C. § 12112(a).

**ANSWER:**     The allegations in paragraph 37 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

38.     The ADA defines a "disability" as: (A) a physical or mental impairment that substantially limits one of more major life activities of such individual, (B) a record of such an impairment, or (C) being regarded as having such an impairment." 42 U.S.C. § 12101(1).

**ANSWER:**     The allegations in paragraph 38 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

39.     The ADA mandates the definition of disability to "be construed in favor of broad coverage of individuals under this chapter, to the maximum extent permitted by the terms of this chapter." 42 U.S.C. § 12102(4)(A).

**ANSWER:**     The allegations in paragraph 39 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

40.     Major life activities under the ADA include: "hearing[.]" 42 U.S.C. 12102(2)(A).

**ANSWER:**     The allegations in paragraph 40 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

41.     Plaintiff's deafness and/or hearing impairment constitutes a disability under the ADA.

**ANSWER:**     The allegations in paragraph 41 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied, including any awareness by North Memorial of the extent of Vogt's hearing ability/impairment except as stated elsewhere in this Answer.

42.     Defendant was aware of Plaintiff's disability.

**ANSWER:**     North Memorial denies the allegations in paragraph 42 as stated. North Memorial affirmatively alleges that it only knew from Favorite that the unnamed individual was hard of hearing and "communicate[d] via phone and stated that with people who have masks she uses signs to help communicate."

43.     Defendant's conduct including refusing to hire Plaintiff because of her disability violated the ADA.

**ANSWER:**    The allegations in paragraph 43 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

44.     As a result of Defendant's conduct in direct violation of the ADA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress, and other damages in amounts in excess of $75,000.

**ANSWER:**    The allegations in paragraph 44 are denied.

45.     Defendant committed the above-described acts with malice and/or in reckless disregard of Plaintiff's rights under the ADA. As a result thereof, Plaintiff is entitled to punitive damages.

**ANSWER:**    The allegations in paragraph 45 are categorically denied.


### COUNT II

**VIOLATION OF THE AMERICANS WITH DISABILITIES ACT**
**42 U.S.C. § 12101, *et seq.* (Failure to Accommodate)**

46.     Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

**ANSWER:**    North Memorial incorporates its responses to all foregoing paragraphs as if fully set forth herein.

47.     The ADA provides that discrimination includes the failure to make reasonable accommodations for an individual's disability. 42 U.S.C. § 12112(b)(5)(a).

**ANSWER:**   The allegations in paragraph 47 purport to be legal conclusions that require no affirmative response. Vogt has no legal claim against North Memorial.

48.   Defendant was aware of Plaintiff's disability and was obligated to engage in an interactive process to determine whether Plaintiff needed accommodations to perform the essential functions of the greeter position.

**ANSWER:**   North Memorial denies the allegations in paragraph 48 as stated. North Memorial affirmatively alleges that it only knew from Favorite that the unnamed individual was hard of hearing and "communicate[d] via phone and stated that with people who have masks she uses signs to help communicate." Any remaining allegations, including any obligation to engage in an interactive process, are denied.

49.   Reasonable accommodations for Plaintiff's disability existed.

**ANSWER:**   The allegations in paragraph 49 are denied.

50.   Defendant violated the ADA by failing to provide accommodations and/or engage in an interactive process to determine whether Plaintiff was able to perform the essential functions of the position with or without an accommodation.

**ANSWER:**   The allegations in paragraph 50 purport to be legal conclusions that require no affirmative response. North Memorial specifically denies that it was obligated to provide any accommodation or engage in any interactive process under the circumstances as North Memorial understood them at the time in July 2020, including based on the information provided to North Memorial by Favorite, who was responsible for screening candidates for the Door Greeter/Escort role.

51.     As a result of Defendant's conduct in direct violation of the ADA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress, and other damages in amounts in excess of $75,000.

**ANSWER:**     The allegations in paragraph 51 are denied.

52.     Defendant committed the above-described acts with malice and/or in reckless disregard of Plaintiff's rights under the ADA. As a result thereof, Plaintiff is entitled to punitive damages.

**ANSWER:**     The allegations in paragraph 52 are categorically denied.

### COUNT III

### VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT
### MINN. STAT. § 363A.01, *et seq.* (Disability Discrimination)

53.     Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

**ANSWER:**     North Memorial incorporates its responses to all foregoing paragraphs as if fully set forth herein.

54.     The Minnesota Human Rights Act provides that "it is an unfair employment practice for an employer, because of…disability…to: (1) refuse to hire…or (3) discriminate against a person with respect to hiring, tenure, compensation, terms, upgrading, conditions, facilities, or privileges of employment. Minn. Stat. § 363A.08 Subd. 2(1) & (3).

**ANSWER:**     The allegations in paragraph 54 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

55.     A disability under Minn. Stat. § 363A.03(12) is "any condition or characteristic that renders a person a disabled person. A disabled person is any person who (1) has a physical, sensory, or mental impairment which materially limits one or more major life activities; (2) has a record of such impairment; or (3) is regarded as having such an impairment."

**ANSWER:**     The allegations in paragraph 55 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

56.     Plaintiff had a qualifying disability under the MHRA.

**ANSWER:**     The allegations in paragraph 56 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

57.     Plaintiff's deafness and/or hearing impairment was a physical impairment that materially limited one or more major life activities.

**ANSWER:**     The allegations in paragraph 57 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied, including any awareness by North Memorial of the extent of Vogt's hearing ability/impairment except as stated elsewhere in this Answer.

58.     Defendant's conduct herein described including but not limited to refusing to hire Plaintiff and/or terminating Plaintiff's employment violated Minn. Stat. § 363A.08.

**ANSWER:**     The allegations in paragraph 58 are denied.

59.     As a result of Defendant's conduct in direct violation of the MHRA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $75,000.00 but to be determined by a jury at trial.

**ANSWER:**     The allegations in paragraph 59 are categorically denied.

60.     Defendant committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result thereof, and to the extent necessary, Plaintiff gives notice of her intent to seek leave to add a claim for punitive damages under the MHRA.

**ANSWER:**     The allegations in paragraph 60 are categorically denied.

## COUNT IV

### VIOLATION OF THE MINNESOTA HUMAN RIGHTS ACT
### MINN. STAT. § 363A.01, *et seq.* (Failure to Accommodate)

61.     Plaintiff incorporates the foregoing paragraphs of her Complaint by reference.

**ANSWER:**     North Memorial incorporates its responses to all foregoing paragraphs as if fully set forth herein.

62.     Minnesota Statute § 363A.08, subd. 6, makes it an unfair employment practice for an employer "not to make reasonable accommodation to the known disability of a qualified disabled person ... unless the employer ... can demonstrate that the accommodation would impose an undue hardship on the business."

**ANSWER:**     The allegations in paragraph 62 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

63.     Plaintiff's deafness and/or hearing impairment constituted an impairment that substantially and materially limited one or more major life activities and has a record of such impairment.

**ANSWER:**     The allegations in paragraph 63 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied, including any awareness by North Memorial of the extent of Vogt's hearing ability/impairment except as stated elsewhere in this Answer.

64.     Defendant failed to reasonably accommodate Plaintiff's known disability and failed to engage Plaintiff in an interactive process to determine whether reasonable accommodations for Plaintiff were available.

**ANSWER:**     The allegations in paragraph 64 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

65.     Defendant's conduct described herein constituted unfair employment practices in violation of Minn. Stat. § 363A.08, Subd. 6.

**ANSWER:**     The allegations in paragraph 65 purport to be legal conclusions that require no affirmative response. If the allegations are intended to support a legal claim against North Memorial, they are denied.

66.     As a result of Defendant's conduct in direct violation of the MHRA, Plaintiff has suffered loss of past and future income, mental anguish, emotional distress and other damages in an amount in excess of $75,000.00.

**ANSWER:**     The allegations in paragraph 66 are denied.

67.     Defendant committed the above-alleged facts with malice, reckless disregard or deliberate disregard for the rights and safety of Plaintiff. As a result thereof, and to the extent necessary, Plaintiff gives notice of her intent to seek leave to add a claim for punitive damages under the MHRA.

**ANSWER:**     The allegations in paragraph 67 are categorically denied.


## DEFENSES AND AFFIRMATIVE DEFENSES

North Memorial sets forth the following defenses and affirmative defenses. North Memorial does not assume the burden of proof with respect to any matter at or which, pursuant to law, Plaintiff-Intervenor Vogt bears the burden.

1.      Vogt's Complaint fails to plead, allege, or state facts sufficient to state a claim upon which relief can be granted against North Memorial.

2.      Vogt's claims are barred, in whole or in part, to any extent mandatory administrative remedies have not been exhausted or other applicable statutory prerequisites to filing suit have not been met.

3.      Vogt's claims and allegations may be barred in whole or in part by the scope of charge doctrine.

4.      Vogt was not an applicant entitled to protection under the ADA.

5.      Vogt is not disabled and is not a qualified person with a disability.

6.      Vogt was unable to fulfill all essential functions of the temporary greeter position, even assuming she had applied.

7.      Vogt failed to fully inform North Memorial of the extent to which her hearing is impaired.

8.      Vogt's purported claims are barred in whole or in part by the same decision defense.

9.      Any requested/purported accommodations were unreasonable and constituted undue hardship and/or would have resulted in or created a direct threat to the health and safety of others.  These undue hardships and direct threat defenses bar Vogt's purported claim.

10.     Vogt suffered no adverse employment action.

11.     Vogt has failed to mitigate her damages, if any.

12.     Any actions taken by North Memorial were based upon legitimate, nondiscriminatory, and non-retaliatory reasons, and not in violation of any contract, policy, statute, law, rule, regulation, or ordinance prohibiting discrimination based on disability or any other protected category.

13.     Any actions taken by North Memorial were based on legitimate business considerations, were reasonable and undertaken in good faith, and were done without the intent to discriminate against, injure, or harm Vogt.

14.     Any damages sustained by Vogt, as alleged in the Intervenor Complaint, were caused or contributed to by her own actions or inaction.

15.     Vogt is barred from obtaining the relief sought in this action based upon the doctrines of estoppel, waiver, laches, and/or unclean hands.

16.     Vogt's damages, if any, are barred, in whole or in part, by the after-acquired evidence doctrine.

17.     Vogt's claims for relief, to the extent they state a claim, are subject to any applicable damages caps or limitations.

18.     North Memorial asserts that it may have further and additional affirmative defenses, the nature of which cannot be determined until it has had an opportunity to engage in discovery.

North Memorial therefore incorporates any and all affirmative defenses and reserves the right to assert additional affirmative defenses as discovery progresses.

19.     As Vogt asserts claims under the Minnesota Human Rights Act, North Memorial will seek an award of fees pursuant to Minn. Stat. § 363A.33 subd. 7 as the prevailing party.

WHEREFORE, North Memorial demands judgment against Plaintiff-Intervenor as follows:

1.     Dismissal of the Intervenor Complaint with prejudice and on the merits;

2.     Awarding North Memorial its costs and attorneys' fees incurred herein; and

3.     For such other and further relief as the Court deems just and equitable.


Dated:  July 28, 2022                          **FREDRIKSON & BYRON, P.A.**

                                               _/s/ Kendra D. Simmons_
                                               Brian T. Benkstein
                                               Kendra D. Simmons
                                               **FREDRIKSON & BYRON, P.A.**
                                               200 South Sixth Street, Suite 4000
                                               Minneapolis, MN  55402-1425
                                               Telephone:  612.492.7000
                                               bbenkstein@fredlaw.com
                                               ksimmons@fredlaw.com

                                               **_Attorneys for Defendant_**